UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GINA SLONE,

    Plaintiff,

-vs-                                                    Case No. 8:09-CV-1175-T-27TGW

SHERIFF GRADY JUDD, et al.,

    Defendants.
_____/

## ORDER

Before the Court are Defendants' Motion to Dismiss Counts II, IV, VI, VII, VIII and IX of the Second Amended Complaint and Supporting Memorandum (hereinafter "motion to dismiss") (Dkt. 13), Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Memorandum of Law (hereinafter "response") (Dkt. 25), and Plaintiff's notice of supplemental authority in support of her response (Dkt. 29).

## STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure specifies that a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). If the complaint fails to state a claim upon which relief may be granted, a motion to dismiss may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). "Factual allegations must be enough to raise a right to relief above the speculative level

on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead enough facts to state a plausible basis for the claim. *Id.*; *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) ("To survive dismissal, 'the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed.'") (quoting *Twombly*, 550 U.S. at 555-56). Additionally, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## FACTS ALLEGED

The Second Amended Complaint alleges: At an unspecified time on March 18, 2006, arresting officers brought James Lee Griffin ("the decedent") to the Central County Jail in Bartow, Florida (Dkt. 8 at pg. 4). Because of "his probation status and/or records from prior incarceration," the arresting officers "knew or should have known that [the decedent] had mental illnesses[.]" (Id.). The arresting officers, however, "failed to inform the book-in officers and personnel of his mental status, and failed to bring him to the Special Needs Unit."[1] (Id.).

When he arrived at the jail, the decedent told "a nurse and various book-in personnel of his bipolar condition." (Id.). Although the "book-in personnel," Defendants Kemp, Stoff, Wiegert, Albritton, and Reimer, observed or were aware that the decedent was "screaming, yelling and kicking doors, and had been placed in a padded cell due to his abnormal behavior...and his speech was incoherent and irrational[,]" they

---

[1]The Special Needs Unit "has nurses and law enforcement officers/employees who are trained to handle mentally ill inmates." (Id.).

"failed to place [the decedent] in the Special Needs Unit." (Dkt. 8 at pgs. 4-5). Instead, the decedent was transferred to the general detainee population (Dkt. 8 at pg. 5).

While in the general detainee population, the decedent "was shouting, waiving a broken broomstick at other inmates, and otherwise behaving irrationally." (Id.). Defendant Stimphyl removed the decedent from the general detainee population and placed him in a holding cell. (Id.). Defendant Stimphyl had seen the decedent "many times before and said that [the decedent] 'always acted this way every time.'" (Id.).

The decedent was transferred from the holding cell into an isolation cell. (Id.). While in the isolation cell, his "behavior worsened and his condition degenerated." (Id.). He "was extremely agitated, continuously sweating, pacing, yelling, talking to himself, kicking and banging the door, and throwing his food[,]...talking incoherently...[and] maybe talking to other people in the cell that weren't there.'" (Dkt. 8 at pgs. 5-6). He did not sleep the night of March 18, 2006. (Dkt. 8 at pg. 5). "Numerous officers" observed the decedent's behavior and "updated their logs every fifteen to thirty minutes."[2] (Id.). Other inmates "said that it was plain to see the [decedent] was mentally ill and that he should have been provided medical attention." (Id.). Defendant Marcum saw the decedent's behavior and said that the decedent "may have been mentally ill I wasn't quite sure so at that point it was my judgment to let him be." (Dkt. 8 at pgs. 5-6).

The decedent continued his "abnormal and irrational behavior" into March 19, 2006. (Dkt. 8 at pg. 6). Nurse Rines[3] came to the isolation unit to see two other inmates and noted that the decedent "had his face pressed on the door and was yelling, banging and kicking the door." (Id.). Nurse Rines, however, did not refer the decedent for medical attention. (Id.).

At 8:00 p.m. on March 19, 2006, Defendants Dort, Mayhue, Galloway, Burgess, Brown, Marcum,

---

[2]The Second Amended Complaint does not identify these officers.

[3]The Court notes that Plaintiff voluntarily dismissed Defendant Rines from this action (Dkt. 31).

3

Dupree, Despirito, Hodge, and Reed came to the decedent's cell, "allegedly to prevent him from harming himself...[because he] was throwing himself against the steel door of his cell and the glass on the door was cracked." (Id.). Before opening the cell door, the decedent was ordered to "face the wall, place his hands behind him, and fall to his knees." (Id.).[4] Subsequently, the officers entered the cell. Before the decedent was restrained, "several different officers" shocked the decedent "numerous times by an electric shield." (Id.). The officers then restrained the decedent by handcuffing him and placing shackles on his ankles. (Dkt. 8 at pgs. 6-7). While the decedent was pushed up against a wall in the cell, "an officer repeatedly kicked him in the back." (Dkt. 8 at pg. 7). The decedent was also "tasered several times after his wrists were cuffed, his ankles shackled, and he was otherwise restrained." (Id.). At no time while the officers were in his cell did the decedent "actively resist the officers' attempts to restrain him." (Dkt. 8 at pg. 6). He did, however, "tense[] his body and tried to pull his extremities under him in an attempt to shield himself from physical abuse and the beatings to various parts of his body." (Id.).

After the officers restrained the decedent, they dragged him by his feet to the nurse station. (Dkt. 8 at pg. 7). The decedent did not resist the officers while they dragged him. (Id.). At the nurse station, the officers "hog tied" the decedent by chaining the shackles to the handcuffs. (Id.). At some point while the decedent was at the nurse station, Defendant Mayhue used the electric shield on the decedent while he was handcuffed and shackled. (Id.).

At some point while the decedent was at the nurse station, he became "unresponsive." (Id.).[5] The officers placed him on a gurney. (Id.). Nurse Rines placed ammonia under his nose. (Id.). Nurse Rines and

---

[4]The Second Amended Complaint does not assert whether or not the decedent complied with this order.

[5]The Second Amended Complaint alleges that "the total amount of time that elapsed from the moment the officers entered [the decedent's isolation cell] until [he] became unresponsive was approximately eight minutes." (Dkt. 8 at pgs. 7-8).

4

the officers attempted CPR. (Id.). Defendant Brown ran to get the electronic defibrillator from the Sergeant's office. (Id.). The nurse applied the defibrillator to the decedent, but it repeatedly said "shock not advised." (Id.). EMS was called and came to the scene, but their efforts to resuscitate the decedent failed. (Dkt. 8 at pg. 8).

The Second Amended Complaint alleges that the officers' use of excessive force and failure to refer the decedent for medical care or attention caused the decedent's death. (Id.). It also alleges that Defendant Judd's "custom" or "policy" was the moving force behind the officers' excessive force and failure to refer the decedent for medical attention. (Id.). The Second Amended Complaint alleges that between 2000 and 2006, thirteen inmates died in Polk County jails from excessive force or failure to refer them for medical treatment. (Dkt. 8 at pg. 9).

Plaintiff, the decedent's mother and personal representative of his estate, brings claims against Defendant Judd for negligent hiring, training, supervision, and retention of his employees (Count I), vicarious liability for the negligence of his employees pursuant to Section 768.28, Fla. Stat. (Count II), direct liability for the actions of his employees pursuant to Florida's "undertaker doctrine" (Count IX), assault (Count III), battery (Count V), and violation of the decedent's Fourth and Fourteenth Amendment rights as a result of a custom or policy that was the moving force behind the employees' use of excessive force and failure to refer the decedent for medical attention (Count VII). Plaintiff brings claims against the individual officers and employees for assault (Count IV), battery (Count VI), and violation of the decedent's Fourth and Fourteenth Amendment rights (Count VIII).

## DISCUSSION

### 1. Count II

The essence of Count II of the Second Amended Complaint is Plaintiff's allegation that Defendant

5

Judd is vicariously liable for the conduct of his employees in breaching their duty "to act prudently and reasonably" by using excessive force and failing to refer the decedent for medical care. (Dkt. 8, ¶¶ 47-50). Defendants argue that excessive force is an intentional tort and therefore there cannot be a claim for "negligent" use of excessive force.[6] Although Plaintiff contends that Count II is not a claim based on negligence, a fair reading of Count II does indicate that it is a claim based on "negligent acts." (Dkt. 8, ¶ 48).

"The Florida courts have consistently and unambiguously held that 'it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort.'" *Secondo v. Campbell*, 327 Fed. Appx. 126, 131 (11th Cir.2009) (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3rd DCA), *review denied,* 683 So. 2d 484 (Fla. 1996)). Thus, Defendants' motion to dismiss will be granted to the extent Count II of the Second Amended Complaint seeks to hold Defendant Judd liable for his employees' "negligent acts" "when they used excessive force against [the decedent.]" (Dkt. 8 at pg. 12).

## 2. Counts IV and VI

Count IV of the Second Amended Complaint asserts a claim for assault against all the individual officers in their individual capacities. Count VI asserts a claim for battery against the individual officers in their individual capacities.

> Under Florida law, battery consists of (1) an act intended to cause a harmful or offensive contact to another person and (2) as a direct or indirect result of such action, an offensive contact with another person. *See Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359, 1367 (M.D. Fla. 1999) (citing *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Ct. App. 1996). An assault consists of an intentional, unlawful offer of corporal injury to another by

---

[6]The Court notes that Defendants did not move to dismiss Plaintiff's claim in Count II that Defendant Judd is liable for his employees' alleged breach of their duty to act prudently and reasonably in failing to refer the decedent for medical care.

6

force, or an exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril. *See Lay v. Kremer*, 411 So.2d 1347 (Fla. Ct. App. 1982).

*Duran v. City of Satellite Beach*, 2005 U.S. Dist. LEXIS 41795 (M.D. Fla. 2005).

Defendants do not argue that the allegations of the Second Amended Complaint are insufficient to allege claims for assault and battery. Instead, Defendants argue that pursuant to Section 768.28(9)(a), Fla. Stat., these claims should be dismissed because the Second Amended Complaint does not assert that the officers "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

The Second Amended Complaint does not allege that the individual officers acted outside the scope of their employment when allegedly committing the assault and battery. Accordingly, they may be liable for assault and battery only to the extent that they acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28(9)(a), Fla. Stat.

The Second Amended Complaint alleges, *inter alia*, that the decedent "was also tasered several times after his wrists were cuffed, his ankles shackled, and he was otherwise restrained." Taking the allegations of the Second Amended Complaint as true, a reasonable jury could find that Defendants acted in bad faith, maliciously, or with wanton and willful disregard of the decedent's rights and safety. *See McGhee v. Volusia County*, 679 So. 2d 729, 733 (Fla. 1996) ("the question must be put to the fact-finder whether Deputy Hernlen acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or wilful disregard of human rights, safety, or property.").[7] Dismissal of Counts IV and VI is inappropriate because the allegations

---

[7]In their motion to dismiss, Defendants do not cite to any authority which holds that the allegations of the complaint must specifically track the language of 768.28(9) that states employees are immune from suit unless their actions are taken "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Under Florida law, "[o]n a review of a motion to dismiss, [the court] must accept the well-pled allegations of the complaint as true...and determine whether [Plaintiff's] factual allegations, assumed to be true, could be

7

against the officers fall within the exception of Section 768.28(9), which provides for personal liability for employees acting "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

Nevertheless, Count IV and Count VI allege that all the individual defendants[8] committed an assault and battery on the decedent. The factual allegations of the Second Amended Complaint, however, indicate that only Defendants Dort, Mayhue, Galloway, Burgess, Brown, Marcum, Dupree, Despirito, Hodge, and Reed entered the decedent's cell and used force on him (Dkt. 8 at pgs. 6-7). The allegations of the Second Amended Complaint are therefore insufficient to state a claim for assault or battery against Defendants Rines, Kemp, Stoff, Vasquez, Stimphyl, Reimer, Albritton, and Wiegert. Accordingly, Defendants' motion to dismiss Counts IV and VI will be granted without prejudice to Plaintiff amending Counts IV and VI.

### 3. Counts VII and VIII

Count VII is a claim against Defendant Judd in his official capacity for violation of the decedent's Fourth and Fourteenth Amendment rights to be secure in his person against unreasonable searches and seizures; not to be deprived of life, liberty or property without due process of law; and equal protection of the law. Count VII essentially seeks to hold Defendant Judd liable on a "custom and policy" theory of liability,[9] alleging that the decedent died as a result of the officers carrying out two alleged customs of the Sheriff's Department, using excessive force on prisoners, and failing to refer prisoners for medical care.

---

reasonably found to constitute conduct "exhibiting wanton and willful disregard of human rights, safety or property." *Lemay v. Kondrk*, 860 So. 2d 1022, 1024 (Fla. 5th DCA 2003) (Orfinger, J., dissenting).

[8] All defendants except Defendant Judd.

[9] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) (a municipality can be sued for damages under §1983 only when the action that is alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or the action is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels.").

Count VIII is a claim against the officers in their individual capacities for violating the decedent's Fourth and Fourteenth Amendment rights by subjecting him to excessive force and failing to refer him for medical care.

A. Fourth Amendment claims

Defendants argue that Plaintiff's Fourth Amendment claims against both Defendant Judd and the officers are inappropriate because the decedent was a pretrial detainee at the time of the alleged constitutional violations, and therefore the claims are governed by the Fourteenth Amendment. In her response to Defendants' motion to dismiss, Plaintiff asserts that the Fourth Amendment is applicable because "some actionable conduct may have occurred while [the decedent] was an arrestee and before he was fully booked in and legally established as a pre-trial detainee[.]" (Dkt. 25 at pg. 5).

"Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause[.]" *Burkett v. Alachua County*, 250 Fed. Appx. 950, 953 n. 5 (11th Cir. 2007) (unpublished opinion) (quoting *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996)). All claims that officers used excessive force in the course of an arrest are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). "The precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit." *Burkett*, 250 Fed. Appx. at 953 n. 5 (quoting *Hicks v. Moore*, 422 F.3d 1246, 1253 n.7 (11th Cir. 2005)). Further, "the Eleventh Circuit has never been squarely faced with the question whether a court should apply the 'deliberate indifference' standard of the Fourteenth Amendment, or the 'reasonableness' standard of the Fourth Amendment to a claim of denial of medical care by arresting officers." *Aurich v. Thomas*, 2010 U.S. Dist. LEXIS 13998, 2010 WL 667948 at *3 (S.D. Fla. 2010)

(citation omitted).

In his response to Defendants' motion to dismiss, Plaintiff argues that "some actionable conduct may have occurred while [the decedent] was an arrestee and before he was fully booked in and legally established as a pre-trial detainee" and therefore "the reference to the Fourth Amendment for possible constitutional violations while [the decedent] was an arrestee is not only appropriate but prudent[.]" (Dkt. 25 at pgs. 5-6). Plaintiff concedes, however, that "the majority of the alleged acts of the Defendants are alleged to have occurred while [the decedent] was a pre-trial detainee..." and does not dispute that the decedent was "established as a pre-trial detainee" at the time the officers allegedly used excessive force. (Dkt. 25 at pg. 5). Plaintiff argues that the actions of those Defendants who failed to refer the decedent for medical attention prior to the time "he was fully booked in and legally established as a pre-trial detainee" may be governed by the Fourth Amendment. (Dkt. 25 at pgs. 5-6). Consequently, Plaintiff's excessive force claim will be analyzed under the Fourteenth Amendment.

The Second Amended Complaint essentially alleges that the arresting officers failed to inform the "book-in" officers of the decedent's mental status and failed to bring him to the Special Needs Unit, and the officers involved with the booking process at the jail failed to refer the decedent for medical attention in the Special Needs Unit (See Dkt. 8 at pg. 4, paragraphs 13, 16). Because it is unclear in this Circuit when a seizure ends and pretrial detention begins, *see Burkett*, it is unclear whether the decedent was a pretrial detainee at the time he was being "booked-in" at the jail. Nevertheless, this Court agrees with the court's conclusion in *Ponce De Leon v. Jackson Mem'l Hosp.*, 2009 U.S. Dist. LEXIS 106012, 2009 WL 3818429 at *3 (S.D. Fla. 2009) that:

> In light of the absence of Eleventh Circuit precedent distinguishing between alleged denial of medical care by police to an arrestee and alleged denial of medical care by pretrial detention officials, this Court should apply the Fourteenth Amendment 'deliberate

indifference' standard in this case, rather than the Fourth Amendment's objective reasonableness standard.

The court in *Ponce De Leon* arrived at this conclusion because it found that *Thomas v. Town of Davie*, 847 F.2d 771 (11th Cir. 1998) "appears to be the controlling authority at this time, holding that the substantive due process clause of the Fourteenth Amendment requires the responsible government or governmental agency to provide medical care to persons who have been injured while being apprehended by the police." *Id.*

In *Thomas*, the court concluded that the Fourteenth Amendment "require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by police." *Thomas*, 847 F.2d at 772 (quoting *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 245-46 (1983)). Following *Thomas*, Plaintiff's constitutional claims regarding denial of medical care should be analyzed under the Fourteenth Amendment. Accordingly, Defendants' motion to dismiss Plaintiff's Fourth Amendment claims will be granted.

B. Fourteenth Amendment Deliberate Indifference to Serious Medical Needs

Defendants assert that Counts VII and VIII fail to state a claim for deliberate indifference to serious medical needs. To state such a claim, "Plaintiff must sufficiently allege 'both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need.'" *Harper v. Lawrence County*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)). "To establish 'deliberate indifference,' Plaintiff must demonstrate that Defendants (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence. *Id.* She must also show that those Defendants' conduct caused Harper's injuries. *See Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001)." *Id.* Defendants argue that the Second Amended Complaint fails

to allege facts that show the Defendants knew of a risk of serious harm to the decedent's health and disregarded that risk, and that Defendants' conduct caused the decedent's injuries.[10]

To have subjective knowledge of a risk of serious harm, Defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [ ] must also draw the inference." *Id.* (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)). "Each individual defendant must be judged separately and on the basis of what that person knows." *Harper v. Alabama*, 584 F.3d 1030, 1037 (11th Cir.2009) (citation omitted).[11]

Initially, the Second Amended Complaint does not allege how Defendant Vasquez had actual knowledge of a risk of serious harm to the decedent.[12] Nor does the Second Amended Complaint allege that Defendant Vasquez used any force on the decedent. Consequently, the claims against Defendant Vasquez will be dismissed.

---

[10] In their motion to dismiss, Defendants do not claim that the decedent's alleged bipolar and schizophrenia disorders were not serious medical conditions.

[11] Plaintiff alleges that Defendants Kemp, Stoff, Wiegert, Albritton, and Reimer knew of the decedent's serious medical needs because they either observed or were aware that during the booking process, the decedent was "screaming, yelling and kicking doors, ...had been placed in a padded cell due to his abnormal behavior[,]...and his speech was incoherent and irrational." (Dkt. 8 at pgs. 4-5). Plaintiff alleges Defendant Stimphyl knew of the decedent's serious medical needs because he removed the decedent from general population and placed him in a holding cage after the decedent "was shouting, waving a broken broomstick at other inmates, and otherwise behaving irrationally" and "had seen [the decedent] many times before and said that [the decedent] 'always acted this way every time.'" (Dkt. 8 at pg. 5). Plaintiff alleges Defendant Marcum knew of the decedent's serious medical needs because while the decedent was in an isolation cell, Defendant Marcum saw he "was extremely agitated, continuously sweating, pacing, yelling, talking to himself, kicking and banging the door, and throwing his food[,]...talking incoherently...[and] maybe talking to other people in the cell that weren't there.'" (Dkt. 8 at pgs. 5-6). Plaintiff alleges Defendant Rines knew of the decedent's serious medical needs because she saw the decedent's "face pressed on the door [of his isolation cell, and decedent] was yelling, banging and kicking the door. (Dkt. 8 at pg. 6). Finally, Plaintiff appears to allege that Defendants Dort, Mayhue, Galloway, Burgess, Brown, Marcum, Dupree, Despirito, Hodge, and Reed knew of the decedent's serious medical needs because the decedent "was throwing himself against the steel door of his cell" and "went into [the decedent's] cell to restrain [him], allegedly to prevent him from harming himself." (Dkt. 8 at pg. 6).

[12] The Second Amended Complaint alleges in pertinent part that "[a]n inmate and Detention Deputies John Despirito and Luis Vasquez said the window in [the decedent's] isolation cell was cracked before [the decedent] was placed inside the cell." (Dkt. 8 at pg. 5). There are, however, no factual allegations that Defendant Vasquez had actual knowledge of the decedent's behavior at the jail or need for medical care.

However, the allegations of the Second Amended Complaint regarding the other officers are sufficient to support the plausible claim that the officers disregarded a risk of serious harm to decedent. These facts do sufficiently state a plausible claim for deliberate indifference to a serious medical need.

Nevertheless, Defendants also assert that Count VIII should be dismissed because it intermingles a claim for deliberate indifference to a serious medical need with a claim for excessive force. Defendants argue that these are separate causes of action that have different standards of proof. The Court agrees. The Eleventh Circuit has re-affirmed "the principle that separate, discrete causes of action should be plead in separate counts." *Cesnik v. Edgewood Baptist Church,* 88 F.3d 902, 905 (11th Cir. 1996). Therefore, Plaintiff should raise his claims for excessive force and deliberate indifference to a serious medical need in separate counts.

C. Excessive Force

In their motion to dismiss, Defendants argue that Plaintiff's claim that Defendants used excessive force on the decedent fails to state a claim for relief because the Second Amended Complaint does not allege that the Defendants' use of force was applied "maliciously or sadistically for the very purpose of causing harm."

Deciding whether force was applied maliciously and sadistically to cause harm requires an evaluation of "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992). The Second Amended Complaint essentially alleges in pertinent part that on March 19, 2006, the decedent was throwing himself against the cell door, and officers Dort, Mayhue, Galloway, Burgess, Brown, Marcum, Dupree, Despirito, Hodge, and Reed went into the decedent's cell "allegedly to prevent him from harming himself." (Dkt. 8 at pg. 6). Prior

to opening the door, the decedent was ordered "to face the wall, place his hands behind him, and fall to his knees." (Id.). The Second Amended Complaint does not allege whether the decedent complied with that order. However, it does allege that "[a]t no time did [the decedent] actively resist the officers' attempts to restrain him. He simply tensed his body and tried to pull his extremities under him in an attempt to shield himself from physical abuse and the beatings to various parts of his body." (Id.). It alleges that before he was restrained, the decedent was "tasered numerous times by an electric shield by several different officers." (Id.). The decedent was then handcuffed, and his ankles were shackled. (Id. at pgs. 6-7). After the decedent was restrained and not resisting, an officer repeatedly kicked him in his back, and he was tasered several more times. (Id. at pg. 7). The officers then dragged the decedent by his feet to the nurse station. (Id.). The officers then "hog tied" the decedent by using chains to connect the shackles to the handcuffs. (Id.). Defendant Mayhue used an electric shield on the decedent while he was in the nurse station and restrained. (Id.).

Beating and tasering a restrained inmate who offers no resistence violates a constitutionally protected right because the only purpose served is to "maliciously and sadistically cause harm." *See Hadley v. Gutierrez*, 526 F.3d 1324, 1333-34 (11th Cir. 2008) ("[A] handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February 2002."). The Second Amended Complaint sufficiently alleges a claim of excessive force in violation of the decedent's Fourteenth Amendment rights.

Nevertheless, Count VIII asserts a claim for excessive force against all the individual defendants. The allegations of the Second Amended Complaint, however, are insufficient to state a claim for excessive force against Defendants Rines, Kemp, Stoff, Vasquez, Stimphyl, Reimer, Albritton, and Wiegert. Accordingly, Defendants' motion to dismiss Count VIII will be granted without prejudice to Plaintiff amending Count VIII.

Finally, Defendants argue that Count VII should be dismissed because there can be no claim that Defendant Judd's custom or policy was the moving force behind the constitutional violations when there was no underlying constitutional violation. Because the Court concluded, *supra*, that the Second Amended Complaint sufficiently states a plausible claim for excessive force and deliberate indifference to a serious medical need, the motion to dismiss is denied on this ground. Nevertheless, Defendants' motion to dismiss Count VII will be granted without prejudice to Plaintiff amending Count VII to remove reference to the Fourth Amendment.[13]

### 4. Count IX

Count IX of the Second Amended Complaint asserts that Defendant Judd is liable in his official capacity for his employees' actions when they responded to the decedent's isolation cell to prevent decedent from harming himself, and then breached their duty of reasonable care by excessively tasing and kicking him while he was restrained in handcuffs and shackles and not resisting. Plaintiff sues Defendant Judd pursuant to Florida's "undertaker doctrine." Defendants argue that the undertaker doctrine is not a separate cause of action apart from Plaintiff's other claims against Defendant Judd based on his employees' breach of their duty of care.

Florida's "undertaker doctrine" essentially states that "[w]henever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service--i.e., the "undertaker"--thereby assumes a duty to act carefully and to not put others at an undue risk of harm." *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003). The doctrine "applies

---

[13]The individual officer defendants assert they are entitled to qualified immunity from Plaintiff's claim of deliberate indifference to the decedent's serious medical needs. (Dkt. 13 at pgs. 10-13). However, because Plaintiff's claims are dismissed with leave to amend, Defendants' claims of qualified immunity will be denied without prejudice to Defendants reasserting qualified immunity after Plaintiff files her Third Amended Complaint.

to both governmental and nongovernmental entities." *Id.* (footnotes omitted). The "undertaker doctrine" is a recognized common-law basis for imposing a duty of care on the part of one who undertakes to render services to another. *See Wallace v. Dean*, 3 So. 3d 1035, 1047 (Fla. 2009).

As in Count II of the Second Amended Complaint, Count IX improperly attempts to mix an intentional tort, excessive force, with negligence. *See Secondo*, 327 Fed. Appx. at 131 ("there is no such thing as the negligent commission of an intentional tort") (citation omitted). Consequently, Count IX will be dismissed, with leave to amend, for failure to state a claim upon which relief may be granted.

ACCORDINGLY, the Court **ORDERS** that Defendants' motion to dismiss (Dkt. 13) is **GRANTED**, in part, to the extent that:

1. Counts II, IV, VI, VII, VIII, and IX of the Second Amended Complaint are **DISMISSED** without prejudice. Plaintiff is granted leave to amend.

2. Defendant Vasquez is **DISMISSED** from this action.

3. Plaintiff may file a Third Amended Complaint within **TWENTY (20) DAYS** of this Order. If no Third Amended Complaint is filed within the time provided, the case will proceed pursuant to the remaining portions of the Second Amended Complaint. If Plaintiff files a Third Amended Complaint, it shall include all claims against all Defendants, since the Third Amended Complaint will become the operative pleading.

**DONE and ORDERED** in Tampa, Florida, on ___June 22nd___, 2010.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copies furnished to:
Counsel of Record