UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GINA SLONE,

      **Plaintiff,**

-vs-                                        **Case No.  8:09-CV-1175-T-27TGW**

**SHERIFF GRADY JUDD, et al.,**

      **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** is Defendants' Motion for Reconsideration of the Court's Order of Summary Judgment Regarding Count VIII (Dkt. 166). Defendants' motion as to Counts II and X was previously denied (Dkt. 173). Upon consideration, the Motion for Reconsideration as to Count VIII (Dkt. 166) is GRANTED.

### Count VIII

Plaintiff's § 1983 claim in Count VIII is premised on an alleged violation of Griffin's constitutional through excessive force alleged to have been "a part of a larger pattern of excessive force committed by the Sheriff of Polk County and his employees which amounts to a custom or policy by the PCSO resulting in numerous incidents of constitutional deprivation and amount to deliberate indifference of his rights." (Dkt. 40, p. 33). Specifically, for purposes of the motion, Plaintiff asserts that Judd's failure to train on the use of the electronic shield, cell extractions, and failure to prohibit hog-tying was the driving force behind the use of excessive force on Griffin.

Municipal liability under § 1983 is limited to circumstances where "official policy" causes

-1-

a constitutional violation. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). An inadequate training claim can support § 1983 liability. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997), citing *Canton v. Harris*, 489 U.S. 378, 387 (1989). Plaintiff must establish that the inadequate training was a policy which caused the constitutional violation. *Id.* (citing *City of Canton*, 489 U.S. 378, 389-91 (1989)). The requisite policy may be established by a showing that the failure to train reflects a "deliberate or conscious choice" on the part of the Sheriff. *Id.* Plaintiff "must present some evidence that [Sheriff Judd] knew of a need to train . . . in a particular area and [he] made a deliberate choice not to take any action." 151 F.3d at 1350; *American Federation of Labor and Congress of Indus. Organizations v. City of Miami, FL,* ___ F.3d ___, 2011 WL 1233628, 8 (11th Cir. 2011).

Plaintiff did not present evidence of any prior constitutional violations arising from the use of excessive force during a cell extraction, use of the electric shield, or hog-tying. Notwithstanding, "evidence of a single violation of federal rights, accompanied by a showing that [the Sheriff] has failed to train [his] employees to handle recurring situations presenting an obvious potential for such a violation, could trigger . . . liability." *Id.* at 409 (citing *Canton*, 489 U.S. at 390 n.10). In the absence of a pattern of unconstitutional violations, § 1983 liability based on inadequate training may only be established "if the likelihood for constitutional violation is so high that the need for training would be obvious." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1293, *cert. denied*, 130 S.Ct. 1503 (2010) (citing *Gold v. City of Miami*, 151 F.3d 1346, 1351-52 (11th Cir. 1998)).

With respect to cell extractions, Sgt. Marcum testified that although cell extraction training courses exist, the Polk County Sheriff's Office does not provide specific training on cell extractions (Dkt. 79 at pp. 36-43). With respect to use of the electronic shield, Sgt. Marcum testified that the

officers are not trained on how long they may hold the electronic shield on a prisoner (Dkt. 79 at p. 24). The officers were trained that they could use the electronic shield as many times as necessary to gain a prisoner's compliance (Dkt. 71 at p. 32). In the light most favorable to Plaintiff, the Sheriff's Office does not train its officers on the number of times the electronic shield should be applied to an individual, and how long each application should last.

While Sgt. Marcum testified that the Sheriff's Office does not use hog-tying because it can cause positional asphyxia, there is evidence in the record from other officers that they hog-tied Griffin and that there was no policy prohibiting hog-tying. Plaintiff's medical expert, Dr. Anderson, opined that the combination of the use of the electronic shield and positional asphyxia resulted in Griffin's respiratory failure and death (Dkt. 89 at p. 24).

The issue raised in the reconsideration motion therefore is whether the Sheriff's failure to provide specific training in cell extractions and use of the electronic shield during cell extractions and on physically restrained subjects evidences a deliberate indifference to a likelihood of constitutional violation and an obvious need for particularized training in these areas. *See Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1309 (11th Cir. 2006). Stated differently, can it be said that "the likelihood for constitutional violation is so high that the need for training would be obvious?" *Lewis v. City of West Palm Beach, Fla., supra.*

With respect to cell extractions, Plaintiff has not demonstrated that the likelihood of a constitutional violation was so obvious that the Judd's failure to train the officers reflects a "deliberate or conscious choice." Moreover, binding precedent in this Circuit holds that the use of a "hobble hogtie" "and the understanding of its proper application, does not carry a high probability for constitutional violations in the manner intended by the 'so obvious' notice that would open the

door to municipal liability." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d at 1293. As for the use of the electronic shield, however, there is evidence that the Sheriff was on notice that the training was deficient.

When Griffin died, the Sheriff's Office had in its possession the December, 2005 San Jose Police Department Training Bulletin, which cautioned against the use of electric weapons (tasers) for more than three times of five seconds each. Plaintiff's expert, Tucker, explained that the International Association of Chiefs of Police, Legal Advisors Section recommended in 2005 that because of "proximity deaths" that occurred following the use of conducted energy devices ("CED"), that officers use no more than three shocks in a row (Dkt. 91-1 at p. 15). Tucker acknowledged that "there is no conclusive medical evidence within the state of current research that indicates a high risk of serious injury or death from the direct effects of CED exposure" and that "[t]he medical risks involved in repeated or continuous CED discharges are unknown." Because of the unknown effects, however, the medical panel urged "caution in using multiple activations." (Dkt. 91-1; Appx. F, p. 38 ).

Additionally, the Sheriff's Office had the Department of Justice's June 1995 advisory entitled "Positional Asphyxia and Sudden Death," which recommended officer training in recognizing factors contributing to positional asphyxia and sudden death, such as "violent struggle extreme enough for the officers to employ some type of restraint technique," and "unresponsiveness of subject during or immediately after a struggle," among other things. The advisory expressly recommended against the use of the hog-tying method, and recommended, to "help minimize the potential for in-custody injury or death," that officers "follow existing training and policy guidelines for situations involving physical restraint of subjects."

In the light most favorable to Plaintiff, based on the San Jose Police Bulletin and the DOJ Advisory, the Sheriff's Office was on notice that its training on the use of the electronic shield was inadequate and that its failure to expressly prohibit hogtying exposed prisoners like Griffin to a risk of positional asphyxia. However, Plaintiff must establish not only that the Sheriff was on notice of a need to train but also that the Sheriff "made a choice not to do so." *American Federation of Labor and Congress of Indus. Organizations v. City of Miami, FL, supra*, citing *Gold v. City of Miami*, 151 F.3d at 1350 ("To establish ... 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area *and* the municipality made a deliberate choice not to take any action.")(emphasis added). Plaintiff has not adduced evidence on this point, and summary judgment is appropriate. *Id.*

**DONE AND ORDERED** this __5__ᵗʰ day of May, 2011.

*[signature]*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:  Counsel of Record